FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 NOV 14  P 2: 58

RETINELLA E. BRAMWELL               :        CIV. NO. 3:00CV1934(SRU)
          Plaintiff                 :

VS.

THE UNIVERSITY OF CONNECTICUT       :        NOVEMBER 14, 2003
   HEALTH CENTER, STATE OF
CONNECTICUT DEPARTMENT OF
CORRECTIONS, ESTHER MCINTOSH
AND KAREN DUFFY-WALLACE
          Defendants


**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION IN LIMINE**


I.    **PRELIMINARY STATEMENT**

        On November 10, 2003, plaintiff submitted a Motion In Limine to preclude

testimony by defendants' experts, James McMahon, RN and Peter Schulman, M.D.

concerning their opinions as to plaintiff's response during an emergency incident

involving the death of an inmate on Mary 15, 1999.  Plaintiff has listed seventeen

different reasons why this testimony should be precluded.  Primarily, plaintiff contends

that the normal experiences of lay jurors are sufficient for their decision and such

testimony is not necessary.


II.    **BACKGROUND**

        This is a case in which plaintiff outlines her factual version of an incident at one

of the correctional institutions wherein an inmate died while under her control.  Plaintiff

claims that the suspension and demotion she suffered as a result of this incident were

not warranted.  She claims, more specifically, that she was unjustly disciplined because

she is a Jamaican, black woman. Furthermore, she claims that her demotion and suspension were tantamount to retaliation for having filed prior CHRO complaints and suing the defendant in an earlier proceeding.

The defendant denies each and every one of plaintiff's claims. The incident that resulted in plaintiff's demotion and suspension was videotaped as part of the prison's response to a medical incident and reveals a wholly incompetent response by plaintiff, a Correctional Head Nurse to a dire medical emergency that resulted in the death of an inmate.

Defendants intend to present the expert testimony of James McMahon, R.N. and Peter Schulman, M.D. concerning their opinion of plaintiff's response as a Correctional Head Nurse to this emergency incident.

James McMahon, R.N. has been involved professionally with the Department of Correction and/or Correctional Managed Health Care almost continuously since 1968 beginning as a Correctional Medical Attendant. He was employed from 1977-1981 as a Correctional Nurse, from 1981-1988 as a Correctional Head Nurse, from 1988-1991 as Chief of Nursing Services, from 1991-1995 as Regional Health Service Administrator, and from 1999 to the present as a Consultant to Correctional Managed Health Care contributing to the overall development of a Health Services Policy and Procedure Manual based on National Standards for Correctional Health Care.

The purpose of his report is to evaluate the nursing judgment and nursing care exercised and provided by plaintiff during the incident on May 15, 1999. Mr. McMahon will provide expert testimony on the responsibilities of a Correctional Head Nurse, the

2

nursing judgment exercised by Ms. Bramwell, the nursing care provided by her, and his

opinion that Ms. Bramwell abandoned her responsibilities as a Correctional Head

Nurse.  Mr. McMahon will point out numerous instances where Ms. Bramwell displayed

poor management and clinical weakness in the emergency situation as a Correctional

Head Nurse, to wit:

- Having appeared on the scene of the "Code White," Ms. Bramwell's reaction and response to the situation suggest it was non-emergent, though she had not personally assessed the inmate-patient.

- As the senior health services staff person at the scene and on the shift, Ms. Bramwell never accurately assessed the situation herself;

- Ms. Bramwell attempted to contact the physician on call, to discuss a patient for which she had no accurate clinical information at all.

- Ms. Bramwell should have quickly recognized that the other staff nurse was inexperienced and weak clinically, and should not have been left alone to handle the emergency situation; having recognized that, she should have remained with the inmate-patient for the duration of the episode; having done so she would have clearly recognized the urgency of the situation and have taken appropriate and immediate action; the result was an emergency situation that was handled as a non-emergent situation and valuable time was wasted by Ms. Bramwell.

- Ms Bramwell appears confused as to what course to take during the emergency, once acknowledged.  After the inmate-patient is brought to the medical unit in the facility, and Ms. Bramwell becomes aware of the urgency of the situation, she cannot even dial 911 (EMS) successfully.

- Ms. Bramwell allowed the patient to be transported out of the medical unit to the sallyport after the 911 call was made but prior to any indication that the ambulance had arrived.  Ms. Bramwell having the medical unit, its emergency equipment and the medical personnel, herself included, to provide emergency medical support to the inmate, had the authority and obligation to have the inmate remain in the medical unit while awaiting EMS response.  Nonetheless, Ms. Bramwell allows the inmate to be taken out of the medical unit, away from medical resources, to be transported, via stretcher, a very short distance to the facility garage, to await the arrival of community EMS personnel, while ineffective CPR is provided en route.  CPR, airway, continuous assessment and monitoring could have been provided more easily and efficiently had the inmate remained in the

3

medical unit and had EMS personnel been directed to come there compromising more effective emergency medical treatment.

- Ms. Bramwell is seen weakly attempting to check the inmate's responsiveness, and providing what appears to be two chest compressions with one hand.

- Ms. Bramwell attempts to use her protective micro-shield, provided to all staff in the institution for emergency mouth to mouth breathing, while the shield is still sealed.

- CPR is not initiated until a Correctional Officer suggests that it be, and even then, not because anyone has done an effective assessment of the patients breathing or pulse.

- Though two health professionals were present and able to take over the performance of "two-man" CPR, there was no effort to relieve the efforts of the non-professional, Correctional Officer, from doing CPR.

- Throughout the video, Ms. Bramwell demonstrated a clear lack of understanding and familiarity with facility emergency procedures and emergency equipment.

In summary, Mr. McMahon's professional nursing opinion is that at the time of this incident, Ms. Bramwell, unfortunately, did not possess the skills and leadership necessary to carry out the responsibilities of the position of Correctional Head Nurse, evidenced by the following:

- Ms. Bramwell did not accurately assess the inmate's medical condition at the scene (in the cell).

- Ms. Bramwell abandoned the inmate-patient and, by doing so, her Correctional Head Nurse responsibilities.

- Ms. Bramwell, as the senior health services staff person on duty, did not take charge of an emergency medical situation in progress.

- Ms. Bramwell used extremely poor nursing judgment in the entire process of the emergency situation.

- Ms. Bramwell provided sub-standard administrative and clinical nursing care.

4

Dr. Peter Schulman, is a board-certified cardiologist and Associate Professor at the University of Connecticut Health Center, having worked there for the past nineteen years. Dr. Schulman is also a Fellow in the American College of Cardiology. Dr. Schulman will testify as to the appropriate response to a cardiac event and the consequences of the failure to respond appropriately. He will also testify concerning his opinion of Ms. Bramwell's handling of the cardiac arrest involving Mr. Maher:

- Ms. Bramwell failed to take charge of the medical emergency.

- CPR was not initiated promptly.

- CPR was not performed properly.

- Ms. Bramwell could not get the oxygen system to operate.

- Ms. Bramwell was confused and unable to call 911.

- Ms. Bramwell did not call 911 immediately.

## III.    **STANDARD**

The standard for admission of expert testimony pursuant to Rule 702 is a liberal one. The Second Circuit has recognized that the Supreme Court in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), rejected the imposition of a rigid standard for admitting expert testimony as "inconsistent with the liberal thrust of the federal rules." United States v. Locascio, 6 F.3d 924, 938 (2d Cir. 1993), cert. denied, 511 U.S. 1070 (1994) (upholding the district court's admission of an FBI agent's expert testimony concerning organized crimes families). See also F.D.I.C. v. Suna Associates, Inc., 80 F.3d 681, 687 (2d Cir. 1996) (admission of valuation expert's opinion, after trial court's assessment of validity and relevance of his opinion, consistent with "liberal thrust" of federal rules). Therefore, "the Court's role as gatekeeper is tempered by the liberal thrust of the Federal Rules of Evidence and the 'presumption of admissibility.'"

Canino v. HRP, Inc., 105 F. Supp. 2d 21, 28 (N.D.N.Y. 2000) (citing Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995), cert. denied, 517 U.S. 1229 (1996)) (citation and quotations partially omitted).

In Daubert, the Supreme Court held that the trial court's function in determining the admissibility of evidence under Rule 702 is to determine whether the proposed testimony rests on a reliable foundation and whether it is relevant to the task at hand. See Daubert, 509 U.S. at 589. Although the Court identified several factors that may be useful in evaluating proposed expert testimony – e.g., "whether it can be (and has been) tested," whether it "has been subjected to peer review and publication," "the known or potential rate of error," and whether the technique is "generally accepted," the Court specifically noted that these factors do not constitute a "definitive checklist," but rather that "[m]any factors will bear on the inquiry." Id. at 593-94. See also Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 150 (1999) ("'[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject matter of the testimony.'" Where expert testimony does not rest on "scientific foundations…relevant reliability concerns may focus upon personal knowledge or experience." Id. For example, the expert's credentials may be taken into consideration. See, e.g., B. F. Goodrich v. Betkoski, 99 F.3d 505, 525 (2d Cir. 1996). See also McCullock v. H. B. Fuller Co., 61 3d 1038, 1043 (2d Cir. 1995) (glue fumes expert had "specialized knowledge" and was qualified to testify by academic and practical experience).

Once expert testimony is admitted under this liberal standard, the opposing party may use the traditional and appropriate means for attacking evidence – "vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 596. See also McCullock, 61 F.3d at 1043 (criticisms concerning expert's lack of academic training or experience performing air quality studies were matters for cross-examination and went to weight and not admissibility), Calovine v. City of Bridgeport, et al., 1998 WL 171443, *8 (D. Conn., Jan. 27, 1998) ("quibbles defendants had with [expert's] qualifications were explored at length on cross-examination....objections to ]expert's] methodology go to the weight, not the admissibility of such testimony.")

## IV.    ARGUMENT

### A.    Relevance

Plaintiff moves for preclusion of Mr. McMahon's and Dr. Schulman's proposed testimony presumably on the ground that such testimony does not constitute "specialized knowledge" and will not be of assistance to the jury.  Plaintiff's arguments are without merit.  The proposed expert testimony will assist the jury in determining the appropriateness and nondiscriminatory legitimacy of defendants' actions by educating the jury concerning the responsibilities of a correctional head nurse, particularly when responding to emergency events in a correctional setting as well as the proper actions to be taken in rendering medical/nursing assistance in response to a cardiac arrest or emergency event.  These are not issues within their common knowledge.  "Jurors can be assumed to know how a reasonable and prudent person behaves, but a reasonable and prudent person does not automatically know how to act in a situation with which he or she is unfamiliar, and a jury is not automatically able to establish a reasonable standard of care for circumstances with which it is unfamiliar."  Linkstrom v. Golden T. Farms, 883 F.2d 269, 271 (3rd Cir. 1989) (district court erred in precluding testimony by

farm safety expert who, <u>inter alia</u>, "could have made certain [the jurors] understood the dangers of which [defendant farmers] were aware or should have been aware, and the precautions which the [farmers] knew or should have known they could have taken to avert those dangers").

Whether the subject matter of the testimony requires "specialized knowledge" is not the standard for admissibility of expert testimony and, thus, does not provide an appropriate basis for preclusion.  Rather, FRE 702 allows expert testimony "if … specialized knowledge will assist the trier of fact …"  In determining whether expert testimony will be of assistance, the standard is "<u>helpfulness, not necessity</u>."  <u>Central Buffalo Project Corp. v. F.D.I.C.</u>, 975 F. Supp. 226, 230 (W.D.N.Y. 1997), citing 4 Weinstein's Federal Evidence § 702.02[1] (Matthew Bender 2d ed) (emphasis added).  A trial judge has broad discretion under this "helpfulness" standard in deciding whether to admit or exclude testimony.  <u>Id</u>.  Due to the "'Federal Rules' emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility …'"  <u>Id</u>.  (quoting Weinstein at § 702.04[1].  <u>See also</u> <u>Lappe v. American Honda Motor Co., Inc</u>., 857 F. Supp. 222, 226 (N.D.N.Y. 1994); <u>Kumho</u>, 526 U.S. at 142 (a district court's decision to admit expert testimony under <u>Daubert</u> may be reversed only for "abuse of discretion"); <u>McCullock</u>, 61 F.3d at 1042 ("The decision to admit expert testimony is left to the broad discretion of the trial judge and will be overturned only when manifestly erroneous").

In summary, defendants' experts will testify concerning the standards applicable to correctional head nurses in responding to an emergency and/or cardiac event and the manner in which Ms. Bramwell's response to that event did not conform to those

standards.  This information is not within the common knowledge of jurors.  Thus, the

preferred testimony will assist the jury in judging whether defendants' actions relative to

plaintiff as a result of this incident were appropriate and for legitimate, nondiscriminatory

reasons.

### B.   Reliability

Plaintiff presumably challenges the reliability of the preferred testimony on the

ground that the testimony is not based on scientific knowledge or information; that Dr.

Schulman has not indicated he has experience in a prison setting; and that the

testimony "ignores the acts/actions of others trained to perform CPR, all of whom

preceded plaintiff to the scene."

"Many factors will bear on the inquiry [as to reliability and relevance]."  Daubert,

509 U.S. at 593-94.  Where expert testimony does not rest on "scientific

foundations…relevant reliability concerns may focus upon personal knowledge or

experience."  Kumbo, 526 U.S. at 150 ("'[t]he factors identified in Daubert may or may

not be pertinent in assessing reliability depending on the nature of the issue, the

expert's particular expertise, and the subject matter of the testimony'").  Both experts

have a wealth of knowledge and experience and are amply qualified to testify on the

proposed subject matter.

Further, as to Dr. Schulman's qualifications and prior experience in a prison

setting, such matters are for cross-examination and go to weight not admissibility of the

evidence.  See McCullock, 61 F.3d at 1043; Calovine, supra; Stagl v. Delta Air Lines,

117 F.3d 76, 81 (2d Cir. 1997) (district court erred in precluding expert on human

standards. This information is not within the common knowledge of jurors. Thus, the preferred testimony will assist the jury in judging whether defendants' actions relative to plaintiff as a result of this incident were appropriate and for legitimate, nondiscriminatory reasons.

### B.  Reliability

Plaintiff presumably challenges the reliability of the preferred testimony on the ground that the testimony is not based on scientific knowledge or information; that Dr. Schulman has not indicated he has experience in a prison setting; and that the testimony "ignores the acts/actions of others trained to perform CPR, all of whom preceded plaintiff to the scene."

"Many factors will bear on the inquiry [as to reliability and relevance]." Daubert, 509 U.S. at 593-94. Where expert testimony does not rest on "scientific foundations…relevant reliability concerns may focus upon personal knowledge or experience." Kumbo, 526 U.S. at 150 ("'[t]he factors identified in Daubert may or may not be pertinent in assessing reliability depending on the nature of the issue, the expert's particular expertise, and the subject matter of the testimony'"). Both experts have a wealth of knowledge and experience and are amply qualified to testify on the proposed subject matter.

Further, as to Dr. Schulman's qualifications and prior experience in a prison setting, such matters are for cross-examination and go to weight not admissibility of the evidence. See McCullock, 61 F.3d at 1043; Calovine, supra; Stagl v. Delta Air Lines, 117 F.3d 76, 81 (2d Cir. 1997) (district court erred in precluding expert on human

9

interaction with machines as unqualified because he had not worked in the airline industry.)[1]

Moreover, the methodology of evaluating conduct based on applicable standards is accepted. See Kumbo, 526 U.S. at 148-49. "Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from … specialized experience'" (citation omitted). This methodology is commonly used by experts who testify concerning the standard of reasonable care or conduct in a particular occupation. See Linkstrom, 883 F.2d at 269 (trial court erred in precluding testimony of farm safety expert who compared defendants conduct with reasonable and prudent practices of the occupation.

Finally, the acts of others at the scene, who plaintiff fails to mention were correctional officers and not nursing or healthcare personnel, are irrelevant to the issue which is the subject matter of this case and testimony relative thereto. Any quarrel with the expert's interpretation of the facts or the basis for their opinion may be addressed by cross-examination and do not justify preclusion. See e.g., Flavel v. Svedala Industries, Inc., 875 F. Supp. 550, 557 (E.D. Wis. 1994) (defendant's objections to the methods and assumptions of experts go to weight to be given evidence, not its admissibility, and as such should be addressed at trial on cross-examination and rebuttal).

In short, the testimony of Mr. McMahon and Dr. Schulman is relevant and reliable and should be admitted under Daubert.

---

[1]  It should be noted that the UConn Health Center has a locked prison inpatient unit.  Dr. Schulman, as an attending physician, provides care on this unit.

**CONCLUSION**

For the foregoing reasons, defendant respectfully requests the Court deny plaintiff's Motion In Limine.  In the event plaintiff's motion is construed to be a Daubert challenge to defendants' proposed expert trial testimony, defendants respectfully request that an evidentiary hearing concerning the admissibility of the experts' testimony be held at the time of trial.  See AUSA Life Ins. Co. v. Dwyer, 899 F. Supp. 1200, 1201 (S.D.N.Y. 1995) (court to determine admissibility of particular portions of expert's report at trial because validity of objections to much of the challenged expert testimony would become apparent to court only at trial, when the evidence was presented in context); U.S. v. Starzecpyzel, 880 F. Supp. 1027 (S.D.N.Y. 1995) (motion to preclude expert testimony of forensic document examiners concerning foregoing issues denied after hearing).  See also American Federation of State, County and Mun. Employees, AFL-CIO (AFSCME) v. County of Nassau, 96 F.3d 644, 652 (2nd Cir. 1996) (trial court's ability to reach well-grounded decision to disregard expert testimony "arrived at with the benefit of effective cross-examination and the counter weight of the [opposing party's] experts and studies").

RESPECTFULLY SUBMITTED

THE DEFENDANTS
UNIVERSITY OF CONNECTICUT
  HEALTH CENTER, ET AL


RICHARD BLUMENTHAL
ATTORNEY GENERAL


JANE D. COMERFORD
ASSISTANT ATTORNEY GENERAL
UNIVERSITY OF CONNECTICUT
  HEALTH CENTER
263 FARMINGTON AVENUE
FARMINGTON, CT 06030-3803
(860) 679-1114
FEDERAL BAR #ct06328
Email: COMERFORD@ADP.UCHC.EDU

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Memorandum in Opposition to

Plaintiff's Motion in Limine was hand delivered on this 14th day of November, 2003, to

the following:

        John Rose, Jr., Esq.
        Levy & Droney, P.C.
        Pond View Corporate Center
        74 Batterson Park Road
        Farmington, CT 06032

                             Jane D. Comerford
                             Assistant Attorney General

13